**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| VIVIAN K. SMOTHERMAN AND JOANN SMOTHERMAN, | § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | **CASE NO. 1:19-cv-00978-DAE-DH** |
| BAYVIEW LOAN SERVICING, LLC, | § § § | |
| *Defendant*. | § | |

---

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Bayview Loan Servicing, LLC ("Defendant")[1] hereby files this Motion for Summary Judgment and respectfully requests that the Court dismiss the claims asserted against it in Plaintiffs Vivian K. Smotherman and Joann Smotherman's ("Plaintiffs") Original Petition, Application for Temporary Restraining Order & Temporary Injunction and Request for Disclosure (the "Complaint").

## I.
## INTRODUCTION

This entire case is based solely on Plaintiffs' misguided allegations that private mortgage insurance ("PMI") payments on Vivian K. Smotherman's home loan should have automatically terminated on July 1, 2016, but did not and instead Plaintiffs continued to be charged PMI payments. The undisputed summary judgment evidence, however, establishes that the PMI payments were not eligible for automatic termination on July 1, 2016 as a matter of law because Vivian K. Smotherman modified her loan before the automatic termination date, which, under the Homeowners Protection Act ("HPA"), requires that a new automatic termination date be

---

[1] In September 2020, Defendant changed its name to Community Loan Servicing, LLC.  *See* Ex. A ¶ 2.

calculated.  Consequently, Defendant is entitled to judgment as a matter of law dismissing Plaintiffs' claims for violation of the Texas Debt Collection Act ("TDCA") and breach of contract and denying their requests for declaratory and injunctive relief, which are all based on Plaintiffs' faulty allegations that PMI payments should have terminated on July 1, 2016.

The summary judgment evidence also establishes that the PMI payments were not eligible for automatic termination on July 1, 2016 irrespective of the loan modification because Vivian K. Smotherman's loan was in default on that date.  The breach of contract claim fails because there is no contract, no breach occurred, and any such claim is precluded by the statute of frauds.  The TDCA claim should be dismissed because it is barred by the statute of limitations.  Moreover, Joann Smotherman lacks standing to assert any claims against Defendant relating to the PMI payments because she is not a party to the promissory note for the loan. The declaratory judgment claim should be dismissed because it is merely duplicative of Plaintiffs' other claims.  The request for injunctive relief should be denied as moot because Vivian K. Smotherman paid off the loan.

## II.
## SUMMARY JUDGMENT EVIDENCE

Defendant attaches hereto and incorporates by reference the following exhibits in support of its Motion for Summary Judgment:

**Exhibit A**   The Declaration of Jo Ann Snyder ("Ex. A") is incorporated herein by reference, and authenticates the following exhibits referenced therein:

|  |  |
|---|---|
| **Exhibit A-1** | Application |
| **Exhibit A-2** | Note |
| **Exhibit A-3** | Deed of Trust |
| **Exhibit A-4** | PMI Notice |
| **Exhibit A-5** | Modification |
| **Exhibit A-6** | Customer Account Activity Statement and Account History |
| **Exhibit A-7** | Amortization Schedule |

|     |     |
| --- | --- |
| **Exhibit A-8** | Mortgage Loan Statement |
| **Exhibit A-9** | July 19, 2016 Correspondence from Chase |
| **Exhibit A-10** | Assignment |
| **Exhibit A-11** | Release |

**Exhibit B**    Excerpts of the Oral and Videotaped Deposition of Vivian K. Smotherman ("Ex. B") are incorporated herein by reference; and

**Exhibit C**    Excerpts of the Remote Videotaped Oral Deposition of Joann Smotherman ("Ex. C") are incorporated herein by reference.

## III.
## STATEMENT OF UNDISPUTED FACTS

### A.    THE LOAN

On June 8, 2012, Plaintiff Vivian K. Smotherman[2] refinanced an existing loan on the real property located at 157 Bahia Lane, Cedar Creek, Texas 78612 (the "Property"), evidenced by her execution of a 15-year promissory note ("Note") made payable to JPMorgan Chase Bank, N.A. ("Chase") and Plaintiffs' execution of a deed of trust ("Deed of Trust"), which granted a security interest in the Property to secure repayment of the Note. *See* Ex. A ¶¶ 4-5, its Exs. A-2, A-3. Joann Smotherman did not sign the Note in her individual capacity, but rather only as attorney-in-fact for Vivian K. Smotherman. *See* Ex. A-2 at p. 3; Ex. B at p. 16:18-20. Joann Smotherman signed the Deed of Trust, but only in a pro forma capacity and as a non-applicant title holder. *See* Ex. A ¶ 5, its Ex. A-3.

The Note requires Vivian K. Smotherman to make monthly principal and interest payments on the first day of each month beginning on July 1, 2012, and continuing each month until paid in full. *See* Ex. A-1 ¶ 3. The maturity date set forth in the Note is June 1, 2027. *Id.* The Note provides that Vivian K. Smotherman will be in default if she does not pay the full amount of each monthly payment on the date it is due. *See* Ex. A-1 ¶ 6(B). The Note and Deed

---

[2] Vivian K. Smotherman is formerly known as Kevin S. Smotherman. *See* Ex. B at 7:25-8:1-11. Plaintiffs do not dispute that Vivian K. Smotherman is the person obligated under the Note. *Id.* at 16:18-20.

of Trust are collectively referred to herein as the "Loan."

**B.      PRIVATE MORTGAGE INSURANCE REQUIREMENT**

The terms of the Loan required Vivian K. Smotherman to purchase private mortgage insurance and make PMI payments in the amount of $171.28 each month.  Complaint at p. 6; Ex. B at 26:1-4.  In the Deed of Trust, Vivian K. Smotherman agreed to make PMI payments until the "requirement for PMI "ends in accordance with any written agreement . . . providing for such termination **or until termination is required by Applicable Law**."[3] Ex. A-3 at p. 9 (emphasis added).

With her PMI purchase, Vivian K. Smotherman received a Private Mortgage Insurance Cancellation Notice for Fixed Rate Loans (the "PMI Notice") detailing her PMI cancellation rights and responsibilities under the HPA.  *See* Ex. A ¶ 6, its A-4.  Among other things, the PMI Notice notified Vivian K. Smotherman that her PMI payment would automatically terminate on July 1, 2016, which was the date that the principal balance of her loan was scheduled to reach 78% of the original value of the Property.  *Id.*  The original value of the Property at the time Vivian K. Smotherman obtained the Loan was $213,796.00.  *See* Ex. A ¶ 1, its A-1.  Vivian K. Smotherman, through her attorney-in-fact Joann Smotherman, acknowledged receipt of the PMI Notice by signing it on June 8, 2021.  *Id.*  Joann Smotherman did not sign the PMI Notice in her individual capacity, but rather as attorney-in-fact for Vivian K. Smothermann. *Id.*  Neither Chase nor Defendant signed the PMI Notice.  *Id.*

**C.      THE LOAN MODIFICATION**

Before July 1, 2016, the date her PMI payments would automatically terminate, Vivian K. Smotherman entered into a loan modification agreement (the "Modification") with Chase on

---

[3] "Applicable Law" is defined in the Deed of Trust as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable, final, non-appealable judicial opinions." Ex. A-3 at p. 2.

February 15, 2015.  *See* Ex. A ¶ 7, its Ex. A-5.  Among other things, the Modification increased the principal balance of the Loan from $184,729.55 to $193,223.75, reduced the principal and interest portion of Vivian K. Smotherman's monthly payments, and extended the maturity date of the Loan by almost 28 years from June 1, 2027 to February 1, 2055 (the "Modified Loan"). *See* Ex. A ¶¶ 8-9, its Ex. A-5, A-6. The Modification did not, however, obligate Joann Smotherman under the Note because she signed the Modification as a non-borrower partner of a borrower and did not assume any liability under the Modification.  *See* Ex. A-5 at p. 6.

## D.    NEW PMI AUTOMATIC TERMINATION DATE

Based on the Modification, the automatic termination date was recalculated.  Under the HPA, if a borrower agrees to a modification of the terms and conditions of a loan, the automatic termination date "shall be recalculated to reflect the modified terms and conditions of such loan." 12 U.S.C. § 4902(d) (entitled "Treatment of Loan Modification"). Based on the terms and conditions of the Modification, and pursuant to an amortization schedule for the Modified Loan reflecting the new principal balance, new payment amount, new maturity date, and original value of the Property (the "Amortization Schedule"), the date on which the unpaid principal balance of the Modified Loan was first scheduled to reach 78% of the original value of the Property is October 1, 2025.  *See* Ex. A ¶ 10, its Ex. A-7.

## E.    DEFAULT UNDER THE MODIFIED LOAN

After the Modification, Vivian Smotherman defaulted on her monthly payment obligations under the Modified Loan for failure to timely make her July 1, 2016 payment.  *See* Ex. A ¶ 11, its Ex. A-6.  Chase sent Vivian K. Smotherman a mortgage loan statement dated July 16, 2016, reflecting, among other things, the July 1, 2016 payment was still outstanding and that the payment included $171.28 for PMI.  *See* Ex. A ¶ 12, its Ex. A-8. On or about July 19, 2016, Chase also notified Vivian K. Smotherman that her July 1, 2016 payment was past due.  *See* Ex.

A ¶ 13, its Ex. A-9.

**F.    SERVICING TRANSFER AND PAYOFF OF MODIFIED LOAN**

On August 10, 2017, Chase assigned and transferred the Modified Loan to Bayview. *See* Ex. A ¶ 14, its Ex. A-10.  Vivian K. Smotherman paid off the Modified Loan on June 21, 2021. *See* Ex. A ¶ 15, its Ex. A-6.  Bayview thereafter released its lien on the Property.  *See* Ex. A ¶ 15, its Ex. A-11.

**G.    THE INSTANT LAWSUIT**

According to Plaintiffs, the PMI payments should have automatically terminated on July 1, 2016, but Bayview did not terminate the PMI payments on that date or refund the PMI payments made thereafter for which Plaintiffs believe they should not have been charged.  *See* Complaint at p. 6.  Vivian K. Smotherman became in arrears on her mortgage payments and Bayview thereafter sent a notice to Plaintiffs that the Property would be listed for an October 1, 2019 foreclosure sale based on the payment default. *Id.*  Before the scheduled sale, Plaintiffs filed the instant lawsuit asserting claims for violation of the TDCA and breach of contract based on their allegations that the PMI payments should have automatically terminated on July 1, 2016, but not and were instead charged PMI payments thereafter.  Plaintiffs also sought declaratory relief as to their rights and duties under the PMI Notice and injunctive relief to preclude foreclosure. Plaintiffs obtained a temporary restraining order precluding the scheduled foreclosure sale. *See* Doc. No. 1-1 at p. 60-66.

**IV.**
**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper under Rule 56 of the Federal Rules of Civil Procedure when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of demonstrating that no genuine

issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

If the movant succeeds, the nonmovant must come forward with evidence "such that a reasonable party could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993).

The non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007). Conjecture, conclusory allegations, unsubstantiated assertions and speculation are also not adequate to satisfy the non-movant's burden. *Little*, 37 F.3d at 1079; *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Nor are pleadings competent summary judgment evidence. *Little*, 37 F.3d at 1075. A "district court may not make credibility determinations or weigh evidence when deciding a summary judgment motion." *EEOC v. Chevron Phillips*, 570 F.3d 606, 612 n. 3 (5th Cir. 2009). Nor does the court have to sift through the record in search of evidence to support opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

**V.**
**ARGUMENT AND AUTHORITIES**

A.    **ALL OF PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THE LOAN WAS MODIFIED AND THEREFORE PMI PAYMENTS DID NOT AUTOMATICALLY TERMINATE ON JULY 1, 2016**

Defendant is entitled to summary judgment dismissing all of Plaintiffs' claims because the PMI payments did not terminate on July 1, 2016 in light of the loan modification that Vivian K. Smotherman obtained from Chase. Under Section 4902(b) of the HPA entitled "Automatic Termination", the requirement for PMI shall automatically terminate on the "termination date" if, on that date, the borrower is "current" on his loan payments. 12 U.S.C. § 4902(b). The "termination date" is the date on which the "principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage . . . is first scheduled to reach 78 percent of the **original value of the property** securing the loan." *Id.* § 4901(18) (emphasis added). If a mortgagor and mortgagee agree to a loan modification, as is the case here, the "termination date . . . **shall** be recalculated to reflect the modified terms and conditions of such loan." *Id.* § 4902(d) (emphasis added).

Here, Vivian K. Smotherman entered into a loan modification with Chase on February 15, 2015 that, among other things, increased the principal balance of the Loan from $184,729.55 to $193,223.75, reduced the principal and interest portion of her monthly payments, and extended the maturity date of the Loan by almost 28 years from June 1, 2027 to February 1, 2055. *See* Ex. A ¶¶ 7-9, its Ex. A-5-A-6. Based on the Modified Loan, Plaintiffs, as a matter of law, cannot prove that the PMI payments should have automatically terminated on July 1, 2016.

Although the Court need go no further to dismiss this action considering that July 1, 2016 could not be the automatic termination date due to the loan modification, the undisputed summary judgment evidence establishes that the new automatic termination date of the Modified Loan is October 1, 2025. The Amortization Schedule for the Modified Loan confirms, based on

the new principal balance, new payment amount, new maturity date, and original value of the Property at the time Vivian K. Smotherman obtained the loan from Chase, demonstrates that October 1, 2025 is the date on which the unpaid principal balance of the Modified Loan was first scheduled to reach 78% of the original value of the Property. *See* Ex. A ¶ 10, its Ex. A-7. Indeed, 78% of $213,796.00, the original value of the Property at the time Vivian K. Smotherman obtained the Loan (*see* Ex. A-1), is $166,760.88 ($213,796.00 x .78 = $166,760.88). *See* Ex. A-7 at p. 1. The date on which the principal balance of the Modified Loan is first scheduled to reach $166,760.88 (or 78% of the original value of the Property), pursuant to the amortization schedule for the Modified Loan, is October 1, 2025:

| 127 | 9/1/2025 | $ 792.60 | $ 792.60 | 3.875% | $ | 539.44 | $ | 253.16 | $ | - | $ 166,799.00 | $ |
| 128 | 10/1/2025 | $ 792.60 | $ 792.60 | 3.875% | $ | 538.63 | $ | 253.97 | $ | - | $ 166,545.03 | $ |
| 129 | 11/1/2025 | $ 792.60 | $ 792.60 | 3.875% | $ | 537.81 | $ | 254.79 | $ | - | $ 166,290.24 | $ |

Ex. A ¶ 10, its Ex. A-7 at p. 3.

It bears noting that Vivian K. Smotherman agreed in the Deed of Trust that she "shall pay the premiums required to maintain Mortgage Insurance . . . until termination is required by Applicable Law." Ex. 3 ¶ 10. In this case, the HPA clearly provides that the automatic termination date is to be recalculated based on the terms and conditions of the modified loan and that the termination date is October 1, 2025, not July 1, 2016.

To the extent Plaintiffs contend that no exemptions to the right of automatic termination apply, such argument is misguided and does not support any of their claims. The PMI Notice states that there are "exemptions to the right of . . . automatic termination of private mortgage insurance" and that "[t]hese exemptions do not apply to this transaction therefore you have the rights described above." Ex. A-4; *see also* 12 U.S.C. § 4903(a)(1)(A)(ii)(IV). The exemptions to the right to automatic termination are found in Section 4902(g) of the HPA and apply only to "high risk loans." 12 U.S.C. § 4902(g). Specifically, Section 4902(g) states: "The termination and cancellation provisions in subsections (a) and (b) do not apply to any residential mortgage

transaction that, at the time at which the residential mortgage transaction is consummated, has high risks associated with the extension of the loan . . . ." 12 U.S.C. § 4902(g)(1). Thus, the PMI Notice itself provides that the loan Vivian K. Smotherman obtained from Chase was not a high-risk loan. Regardless, there are no allegations that the subject loan is a high-risk loan under 4902(g).  Consequently, Defendant is entitled to summary judgment dismissing all of Plaintiffs' claims because Vivian K. Smotherman's Loan was modified and therefore PMI payments did not and could not automatically terminate on July 1, 2016.

**B.     THE MODIFIED LOAN WAS NOT CURRENT ON JULY 1, 2016, WHICH PRECLUDED PMI PAYMENTS FROM AUTOMATICALLY TERMINATING ON JULY 1, 2016**

Although PMI payments did not and could not automatically terminate on July 1, 2016 because of the loan modification, it bears pointing out that PMI payments would not have automatically terminated on July 1, 2016 irrespective of the modification because Vivian K. Smotherman was not current on her loan payments on July 1, 2016.  Under the HPA, PMI payments automatically terminate on the termination date if the borrower is current on her payments. 12 U.S.C.§ 4902(b); *see also Fried*, 850 F.3d at 596 ("A homeowner's mortgage insurance obligation will not end per § 4902(b)(1) on her termination date if she is not "current on the payments required by the terms of the residential mortgage transaction."). The Note requires that payments be made on the first of each month and if the payment is not made on that date then the loan will be in default.  *See* Ex. A-1 ¶¶ 3, 6(B).  As evidenced by the payment history for the Modified Loan and default notice and mortgage loan from Chase, Vivan K. Smotherman was in default and not current on her loan payments obligations on July 1, 2016 for failure to timely make the July 1, 2016 payment. *See* Ex. A ¶ 11, its Ex. 6 at p. 8, Exs. 8-9.

Therefore, even if no modification had been entered into, Plaintiffs did not meet the requirements to trigger the automatic termination under the HPA on July 1, 2016. *See* 12 U.S.C. § 4902(b). Because Plaintiffs as a matter of law were not entitled to automatic termination of

PMI payments on July 1, 2016, Defendant is entitled to summary judgment dismissing all of Plaintiffs' claims.

C.   **DEFENDANT IS OTHERWISE ENTITLED TO SUMMARY JUDGMENT DISMISSING THE BREACH OF CONTRACT CLAIM**

The breach of contract claim is based on Plaintiffs' allegations that the PMI Notice is a contract that Defendant breached because the PMI Payments did not terminate on July 1, 2016. *See* Complaint ¶¶ 13, 15.  To prevail on a breach of contract claim under Texas law, Plaintiffs must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).

As an initial matter, the breach of contract claim should be dismissed because the PMI Notice is not a contract between Plaintiffs and Defendant, but rather a notice of certain statutory rights under the HPA. *See, e.g., Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 692 (Tex. App.—El Paso 2015) (there is no contract without both offer and acceptance, among others); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.,* No. CIV.A. DKC 10-3517, 2011 WL 3476994, at *14 (D. Md. Aug. 8, 2011) (stating PMI Notice "is better described as a notice of certain statutory rights under the Homeowners Protection Act" and not a "contract"); *Fried v JP Morgan Chase & Co. et al.,* 850 F.3d 590, 596 (3d. Cir. 2017) ("If lenders and servicers could contract around the [HPA's] timeline by redefining key terms, the [HPA] would be no more than a contractual default rule that a few lines of boilerplate could override."). The PMI Notice specifically states that "[t]his notice provides important information regarding your right to cancel this requirement." *See* Ex. A-4. Indeed, the PMI Notice strictly follows the disclosure requirements of Section 4903(a) of the HPA. Section 4903(a) requires:

In any case in which private mortgage insurance is required in connection with a

residential mortgage transaction . . . at the time at which the transaction is consummated, the mortgagee shall provide to the mortgagor . . .written notice (I) that the mortgagor may cancel the requirement in accordance with section 4902(a) of this title indicating the date on which the mortgagor may request cancellation, based solely on the initial amortization schedule; (II) that the mortgagor may request cancellation in accordance with section 4902(a) of this title earlier than provided for in the initial amortization schedule, based on actual payments; (III) that the requirement for private mortgage insurance will automatically terminate on the termination date in accordance with section 4902(b) of this title, and what that termination date is with respect to that mortgage; and (IV) that there are exemptions to the right to cancellation and automatic termination of a requirement for private mortgage insurance in accordance with section 4902(g) of this title, and whether such an exemption applies at that time to that transaction.

12 U.S.C. § 4903(a)(1)(A).

Vivian K. Smotherman's signature on the PMI Notice is not an acceptance of its terms, but rather only an acknowledgment of its receipt. Ex. A-4 (stating "I/we Acknowledge receipt of this notice . . . ." above the signature line). Tellingly, there is no signature line for the lender on the PMI Notice. *Id.* Neither Chase nor Defendant signed the PMI Notice.  The PMI Notice contains no offer or acceptance, no meeting of the minds, and is not consented to by each party. *Karns*, 459 S.W.3d at 692. Additionally, neither party could have bargained for a change of terms of the PMI Notice because they are statutorily set under the HPA's requirements. *See e.g.* 12 U.S.C. § 4902. Thus, the HPA Notice itself cannot provide the basis for any alleged breach of contract claim.

Notwithstanding the above, and assuming the PMI Notice was a contract (which it is not), the breach of contact claim fails because no breach occurred, and the statute of frauds precludes the claim.  Defendant did not breach the PMI Notice because PMI payments did not and could not automatically terminate on July 1, 2016 considering the loan was modified, which required a new termination date to be calculated, and that the loan was not current on July 1, 2016, which precludes automatic termination under the HPA. Further, the Texas statute of frauds provides that when an agreement cannot by its terms be completed in one year, it must be written and

signed by the person to be charged with the agreement to be enforced:

> (a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
>> (1) in writing; and
>> (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
> (b) Subsection (a) of this section applies to:
>> (6) an agreement which is not to be performed within one year from the date of making the agreement;

Tex. Bus. & Comm. Code § 26.01(a), (b)(6).

The PMI Notice references acts to be performed more than one year after the closing of the Loan, including the automatic termination date of July 1, 2016 that Plaintiffs attempt to enforce here. *See* Ex. A-4; *see also* V. Smotherman Depo. p. 40:13-20. Plaintiffs' breach of contract claim alleges that Defendant is the party charged with the purported promise or agreement evidenced by the PMI Notice. *See* Complaint ¶ 9. However, neither Chase nor Defendant signed the PMI Notice. *See* Ex. A-4. Therefore, the statute of frauds bars Plaintiffs from attempting to enforce the supposed "contract" against Defendant.

**D.    DEFENDANT IS OTHERWISE ENTITLED TO SUMMARY JUDGMENT DISMISSING THE TDCA CLAIM BECAUSE IT IS TIME BARRED**

The statute of limitations for TDCA claims is two years. *See Clark v. Deutsche Bank Nat'l Tr. Co., as trustee for Morgan Stanley ABS Capital I, Inc., Tr. 2006-HE3*, 719 F. App'x 341, 343 (5th Cir. 2018); *Onabajo v. Household Fin. Corp. III*, No. 1:18-CV-233-LY, 2018 WL 6739070, at *9 (W.D. Tex. Nov. 19, 2018), *report and rec. adopted*, 2019 WL 2565247 (W.D. Tex. Mar. 26, 2019), *aff'd*, 795 F. App'x 258 (5th Cir. 2020). Thus, a person must bring suit for a TDCA not later than two years after the day the cause of action accrues. *See Nedelkoff v. Texas Guaranteed Student Loan Corp.*, No. 1:19-cv-01028-RP, 2020 WL 10056077, at *3 (W.D. Tex. Nov. 6, 2020), *report and rec. adopted*, 2020 WL 10056134 (W.D. Tex. Dec. 14, 2020) (citing Tex. Civ. Prac. & Rem. Code § 16.003). Generally, in Texas, "a cause of action accrues when a

wrongful act causes some legal injury, even when the fact of injury is not discovered until later, and even if all of the resulting damages have not yet occurred." *Senger Creek Dev., LLC v. Fuqua*, No. 01-15-01098-CV, 2017 WL 2376529, at *10 (Tex. App.—Houston [1st Dist.] June 1, 2017) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)); *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

Further, courts throughout Texas have held that the "continuing tort" or "continuing violation" theory does not apply to the TDCA. *See Nedelkoff v. Texas Guaranteed Student Loan Corp.*, No. 19-CV-1028-RP, 2020 WL 10056077, at *5 (W.D. Tex. Nov. 6, 2020), *report and rec. adopted*, No. 1:19-CV-1028-RP, 2020 WL 10056134 (W.D. Tex. Dec. 14, 2020) ("[T]he continuing violations theory does not apply to TDCA claims."); *Charles v. Exeter Fin. Corp.*, No. 4:16-CV-03480, 2017 WL 6888852, at *2 (S.D. Tex. Dec. 20, 2017), *report and rec. adopted*, No. 4:16-CV-03480, 2018 WL 395492 (S.D. Tex. Jan. 10, 2018) ("there is no authority that suggests the continuing tort doctrine, or the continuing violations theory applies to the TDCA."); *McCartney v. CitiFinancial Auto Credit, Inc.*, No. 4:10-CV-424, 2010 WL 5834802, at *7 (E.D. Tex. Dec. 14, 2010), *report and rec. adopted*, No. 4:10-CV-424, 2011 WL 675386 (E.D. Tex. Feb. 16, 2011).

In this case, Plaintiffs admit that they knew in 2016 that the PMI payments did not terminate on July 1, 2016:

```
3        Q.   But in 2016 you knew that the PMI payments did
4   not terminate on July 2016.
5        A.   Yes.
```

Ex. B at 46:3-5.

Further, Chase provided Vivian K. Smotherman a mortgage loan statement dated July 16, 2016, reflecting, among other things, the July 1, 2016 payment was still outstanding and that the

payment included $171.28 for PMI.  *See* Ex. A ¶ 12, its Ex. A-9. On or about July 19, 2016,

Chase also notified Vivian K. Smotherman that her July 1, 2016 payment was past due and the

total amount past due included the PMI payment.  *See* Ex. A ¶ 13, its Ex. A-10.  Thus, it cannot

be disputed that in July 2016, Vivian K. Smotherman knew that PMI payments did not

automatically terminate when she thought they should have.  However, Plaintiffs did not file the

instant lawsuit until September 24, 2019, which is after the two-year statute of limitations to

assert a TDCA claim lapsed.  *See* ECF 1-1 at p. 4. Therefore, the TDCA claim is time barred and

should be dismissed.

**E.      JOANN SMOTHERMAN LACKS STANDING TO ASSERT CLAIMS AGAINST DEFENDANT**

Article III of the Constitution limits the jurisdiction of federal courts to cases and

controversies. *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 395, 100 S.Ct. 1202, 63

L.Ed.2d 479 (1980). "One element of the case-or-controversy requirement is that [plaintiffs],

based on their complaint, must establish that they have standing to sue." *Raines v. Byrd,* 521 U.S.

811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). This requirement, like other jurisdictional

requirements, is not subject to waiver and demands strict compliance. *Raines,* 521 U.S. at 819;

*Lewis v. Casey,* 518 U.S. 343, 349 n. 1, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To meet the

standing requirement, Joann Smotherman must show: (1) she has suffered an "injury in fact" that

is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2)

the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends*

*of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 145

L.Ed.2d 610 (2000); *Consol. Cos., Inc. v. Union Pacific R.R. Co.*, 499 F.3d 382, 385 (5th Cir.

2007).

Individuals that are not parties to a mortgage loan lack standing to complain about any

alleged misconduct relating to the loan.  *See, e.g., Setzer v. Richards*, No. A-11-CA-214 LY,
2012 WL 32943, at *3 (W.D. Tex. Jan. 5, 2012) (plaintiff that was not a party to the mortgage
loan lacked standing to complaint about any alleged misconduct relating to the mortgage loan);
*Lakiesha v. Bank of New York Mellon*, No. 3:15-CV-0901-B, 2015 WL 5934439, at *3 (N.D.
Tex. Oct. 9, 2015) (holding that plaintiff lacked standing to enforce rights under the subject note
because she was not a party to the note).

      Plaintiffs' claims in this action are premised entirely on their allegations that PMI
payments should have terminated on July 1, 2016, but did not. The PMI payments were
requirements under the terms of the Loan and Modified Loan. Joann Smotherman admits,
however, that she is not a party to or obligated under the Note to make PMI payments and that
Defendant did not make any demand or request to her to make any PMI payments. *See* Ex. C at
37:19-38:1 ("Q . . . you didn't actually sign the note. Right? . . .A. Correct. Q. . . . none of these
requests for payment or demands for payments have been . . . addressed to you, or requested that
you pay them. Correct? A. Correct.").  Indeed, Joann Smotherman did not sign the Note in her
individual capacity, but rather only as attorney-in-fact for Vivian K. Smotherman:

Borrower

*Kevin Smith* by *J Sml*  as  *attorney in fact*
KEVIN S SMOTHERMAN                    Date
By: JOANN SMOTHERMAN, as attorney     Seal
in fact

Ex. A-2 at p. 3; Ex. B at p. 16:18-20.  Joann Smotherman signed the Deed of Trust only in a pro
forma capacity and as a non-applicant title holder:

(B) *"Borrower"* is KEVIN S. SMOTHERMAN, ALSO KNOWN AS KEVIN SMOTHERMAN,
JOINED HEREIN PRO FORMA BY HIS WIFE, JOANN SMOTHERMAN. Borrower is the grantor
under this Security Instrument.

JOANN SMOTHERMAN *                    6-8-12
*Non-Applicant Title Holder*          Date
                                      Seal

Ex. A-3 at pp 1, 18.

Further, Joann Smotherman did not sign the PMI Notice in her individual capacity, but rather only as attorney-in-fact for Vivian K. Smotherman:



Ex. A-4.

Additionally, the Modification did not obligate Joann Smotherman under the Note because she signed the Modification as a non-borrower partner of a borrower and did not assume any liability under the Modification:



Ex. A-5 at p. 6.

Clearly, Joann Smotherman has not suffered any injury or damages considering her admissions that Defendant never requested that she make a PMI payment and that she is not a party to the Note.  Consequently, Defendant is entitled to summary judgment dismissing all claims asserted by Joann Smotherman because she lacks standing to complain about any alleged misconduct relating to the Loan or Modified Loan.

## F.   PLAINTIFFS ARE NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF

A request for a declaratory judgment is remedial in nature and dependent upon the assertion of viable causes of action. *E.g.*, *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003);

*Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170-171 (5th Cir. 1990). Here, Plaintiffs' request for declaratory relief is premised on the same allegations and theories asserted in support of their breach of contract and TDCA claims, both of which fail as the summary judgment evidence establishes. *See* Complaint ¶ 18. Additionally, the request for declaratory relief also fails because it is duplicative of the breach of contract and TDCA claims, and as a result, the declaratory judgment claim is unnecessary. *Ventura v Wells Fargo Bank, N.A.*, No. 4:17-cv-075-A, 2017 WL 1194370, at *3 (N.D. Tex. Mar. 30, 3017). For the same reasons stated above, this Court should deny Plaintiffs' request for declaratory relief.

A request for injunctive relief is not a cause of action itself, but depends on an underlying cause of action. *See Cook v. Wells Fargo Bank, N.A.*, No. 3:10-CV-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (citing *Brown v. Ke–Ping Xie,* 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). In other words, "[i]njunctive relief is simply a form of equitable remedy." *Id.*; *see also Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (holding that injunctive relief requires that plaintiff first plead viable underlying cause of action). Because Plaintiffs have not asserted any viable claims against Defendant, Plaintiffs are not entitled to any injunctive relief and such request should be denied. *See Cruz*, 2018 WL 689610, at * 5; *Von Scheele v. Wells Fargo Bank, N.A.*, No. SA–12–CV–00690–DAE, 2013 WL 5346710, at *6 (W.D. Tex. Sept. 23, 2013) (providing that injunctive relief is inappropriate when the plaintiff's two causes of action failed as a matter of law). Further, the request for injunctive relief is moot because there are no allegations that a foreclosure took place. Additionally, the Modified Loan has been paid off and Defendant released its lien on the Property.

# VI.
## CONCLUSION

WHEREFORE, Defendant respectfully request that the Court grant its Motion for Summary Judgment and dismiss Plaintiffs' claims with prejudice. Defendant further requests that the Court grant it all such other and further relief, in law or in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ *Elizabeth Hayes*
**Marc D. Cabrera**
 State Bar No. 24069453
 mcabrera@polsinelli.com
**Elizabeth Hayes**
 State Bar No. 24069001
 ehayes@polsinelli.com
**POLSINELLI PC**
2950 N. Harwood Street, Suite 2100
Dallas, TX 75201
T: (214) 397-0030
F: (214) 397-0033

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on May 2nd 2022, on all counsel of record via the Court's CM/ECF system pursuant to the Federal Rules of Civil Procedure.

/s/ *Elizabeth Hayes*
Counsel for Defendant